ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| STEPHANIE COLÓN FELICIANO<br><br>Recurrida<br><br>v.<br><br>STEVEN RODRÍGUEZ ROMÁN<br><br>Peticionario | KLCE202500614 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm. PO2024CV03548<br><br>Sobre: Exequátur |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Este recurso de *certiorari* fue presentado el 4 de junio de 2025, por la parte peticionaria, Steven Rodríguez Román. Recurre la parte peticionaria contra una Resolución y Orden dictada por el Tribunal de Primera Instancia, Sala de Utuado (TPI). En dicha Resolución y Orden el TPI decretó No Ha Lugar una solicitud de la parte aquí peticionaria, que pretendía se decretara la nulidad de una Sentencia de divorcio dictada por un Tribunal del estado de New Hampshire. El TPI además le concedió a la parte demandada, aquí peticionaria, para que, en veinte (20) días, mostrara causa por la cual no se debía decretar el archivo de la reconvención y conceder el remedio solicitado en la demanda.

La parte recurrida presentó su escrito en oposición a la expedición del auto y el recurso está perfeccionado para su adjudicación final, lo que aquí hacemos.

**I.**

Este caso se presentó el 10 de diciembre de 2024, por la recurrida Stephanie Colón Feliciano, contra el aquí peticionario,

Número Identificador
RES2025 _____

en una demanda de exequátur que reclama se brinde entera fé y crédito a una Sentencia dictada por un Tribunal del estado de New Hampshire. De las alegaciones de la demanda surge que dicha Sentencia fue dictada por un Tribunal con jurisdicción sobre la materia y las partes, donde en la Sentencia se disolvió el matrimonio entre las partes peticionaria y recurrida, las cuales mientras estuvieron casados, procrearon un hijo.

En la sentencia objeto del exequátur, además del divorcio, se dividieron unos bienes inmuebles del matrimonio, uno de los cuales se encuentra sito en Puerto Rico.

Juntamente con la demanda se incluyeron varios documentos como anejos y los detallamos a continuación.

Exhibit 1-Certificate of Divorce, Civil Union (CU) Dissolution Legal Separation or Annulment.

Exhibit 2-Final Decree on Petition for Divorce, Legal Separation, or Civil Union Dissolution.

Exhibit 3-Uniform Support Order; Child Support Guidelines Worksheet.

Exhibit 4- Uniform Support Order; Standing Order.

Exhibit 5-Parenting Plan

El caso se presentó originalmente en el Municipio de Ponce y el 3 de enero de 2025, se dictó una Orden de Traslado a la Región Judicial de Utuado, por motivo de competencia. El 10 de enero de 2025, la parte demandada, aquí peticionaria, presentó Contestación a Demanda y Solicitud para que se Decrete Nula la Sentencia. En esa moción se reclamó que el Tribunal de New Hampshire actuó sin jurisdicción, al adjudicar a la parte demandante, aquí recurrida, la totalidad de un bien inmueble sito en el barrio Guayo del Municipio de Adjuntas, que había sido adquirido por las partes cuando estaban casados, mediante la

escritura número 1, sobre compraventa, otorgada el 11 de febrero de 2022.

El aquí peticionario reclamó además que la liquidación de esa propiedad inmueble no se podía regir por las leyes de New Hampshire y sí por las leyes de Puerto Rico, conforme el artículo 49 del Código Civil de 2020, cuyo equivalente era el artículo 10 del derogado Código Civil de 1930 y la jurisprudencia interpretativa de esa disposición.

El demandado, aquí peticionario, sometió en su apoyo la escritura número 1, sobre compraventa, otorgada el 11 de febrero de 2022, como prueba documental.

El 17 de enero de 2025, la parte recurrida presentó Moción y destacó que el argumento de la falta de jurisdicción no se levantó oportunamente en el pleito de New Hampshire, ello a pesar de que la parte peticionaria compareció mediante videoconferencia y tuvo la oportunidad de ser oído. Dicha sentencia de divorcio tampoco fue apelada. Al defender la validez de la sentencia de divorcio, la parte recurrida afirmó que, aunque el bien inmueble estuviese ubicado en Puerto Rico, el tribunal de New Hampshire tenía jurisdicción para decidir sobre la división de bienes, si existía una conexión sustancial por razón de que las partes tenían su residencia principal en New Hampshire o si el matrimonio y los bienes se gestionaron principalmente en ese estado. Asimismo, planteó que el tribunal de New Hampshire actuó en virtud de su competencia al efectuar la división de la totalidad de los bienes comunes del matrimonio, dentro de un pleito de disolución matrimonial, sin que ello contraviniera el orden público ni las leyes de Puerto Rico.

El 28 de enero de 2025, la parte peticionaria presentó Réplica a esos argumentos mediante una "Moción en

cumplimiento de orden y en contestación a la reconvención". En esta, insistió en que los bienes adquiridos durante el matrimonio se dividían conforme a las leyes que regían el lugar donde estaba localizado dicho inmueble, independientemente de que las partes contrajeran matrimonio en un estado que no reconocía la sociedad legal de bienes gananciales. Así, se cuestionó una vez más que el tribunal de New Hampshire no actuó legítimamente al adjudicarle la totalidad de la propiedad inmueble ubicada en el Barrio Guayo de Adjuntas.

El 28 de enero de 2025, la parte recurrida presentó la Dúplica a Réplica a "Moción en cumplimiento de orden y en contestación a la reconvención" en la cual reiteró que la sentencia dictada por el tribunal de New Hampshire era válida y que dicho foro tenía jurisdicción para adjudicar la titularidad de los bienes dentro de un pleito de disolución matrimonial según las disposiciones patrimoniales derivadas del divorcio. Distinguió que, aun cuando existiese la presunción de gananciabilidad de los bienes adquiridos durante el matrimonio, según las leyes de Puerto Rico, dicha disposición no podía invalidar por sí sola la sentencia emitida en otra jurisdicción. Máxime ello cuando las partes acordaron someterse al proceso judicial en New Hampshire y litigar a la vez la titularidad de los bienes, incluyendo el inmueble ubicado en Puerto Rico. Por último, la parte recurrida argumentó que al declarar nula una sola disposición de la sentencia de divorcio, ello afectaría los derechos adquiridos bajo dicha sentencia respecto al estado civil.

Luego de varios otros trámites procesales, el 12 de mayo de 2025, el TPI emitió la Resolución y Orden la cual es objeto de este recurso.

Inconforme, la parte peticionaria, el 4 de junio de 2025, presentó el recurso que aquí atendemos y planteó el siguiente error:

"Erró el Tribunal de Primera Instancia al reconocer que el Tribunal de New Hampshire tenía jurisdicción para otorgarle la titularidad total del bien inmueble, sito en Puerto Rico, adquirido vigente el matrimonio entre las partes por razón de que éstos se casaron en New Hampshire, tenían su domicilio en New Hampshire, el demandado-recurrido fue debidamente notificado de la acción de divorcio por ruptura irreparable, no compareció a dicho proceso ni presentó un recurso de revisión de dicha sentencia de New Hampshire ante los foros de mayor jerarquía; y no le es de aplicación el estatuto real en cuando al inmueble adquirido en Puerto Rico."

Se le concedió término a la parte recurrida y se opuso el 13 de julio de 2025. Con el beneficio de todos los escritos en autos, procedemos a resolver el recurso.

**II.**

**A. Recurso de Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

Ahora bien, el ejercicio de nuestra discreción judicial no es absoluto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras

facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de **una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

A pesar de que la Regla 52.1 de Procedimiento Civil, *supra*, permite revisar las determinaciones interlocutorias recurridas, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En consonancia con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. A su vez, la precitada disposición reglamentaria permite que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, *supra*, pág. 176.

En atención a los preceptos discutidos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Así pues, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023).

Por último, es menester puntualizar que la denegatoria del auto de *certiorari* no implica la ausencia de error en el dictamen, cuya revisión se solicita, ni constituye una adjudicación en sus méritos. *Torres Martínez v. Torres Ghigliotty*, *supra*, pág. 99. En estos casos, la denegatoria es una facultad discrecional, que evita una intervención apelativa a destiempo con el trámite pautado por el foro de instancia. Íd. Por tanto, una vez el foro primario dicte sentencia final, la parte afectada ostentará el derecho para presentar el recurso apelativo correspondiente. Íd. págs. 98-99.

**B. Petición de Exequátur**

En nuestro ordenamiento jurídico, las sentencias y las órdenes dictadas por los tribunales de un estado de la Unión o país extranjero no operan en forma directa o *ex proprio vigore*. *Colón Vega v. Diaz Lebrón*, 211 DPR 548, 557 (2023); *Rodríguez Contreras v. E.L.A.,* 183 DPR 505, 516 (2011). En vista de ello, contamos con el procedimiento de exequátur, el cual permite el reconocimiento judicial de una sentencia extranjera en donde se pretende hacer efectiva. *Gulf Petroleum et al. v. Camioneros*, 199 DPR 962, 966 (2018). Su trámite puede ser *ex parte* u ordinario. Regla 55.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 55.1.

Así pues, el propósito de este mecanismo es garantizar a las partes afectadas por una sentencia extranjera el debido proceso de ley, y así brindarles la oportunidad para ser escuchadas y presentar sus defensas. *Toro Avilés v. P.R. Telephone Co.,* 177 DPR 369, 375 (2009); *Mench v. Mangual*, 161 DPR 851, 856 (2004). En este procedimiento, las sentencias extranjeras son las dictadas por tribunales ajenos al Gobierno de Puerto Rico, "tanto aquellas dictadas por tribunales de países extranjeros como las dictadas por tribunales estatales de Estados Unidos". *Gulf Petroleum et al. v. Camioneros*, *supra*, pág. 966.

A esos fines, la Regla 55.2(a) de Procedimiento Civil, 32 LPRA, Ap. V, R. 55.2(a), establece que en los casos ordinarios la parte interesada presentará ante la sala correspondiente del Tribunal de Primera Instancia una demanda contra todas las demás personas afectadas por la sentencia de otra jurisdicción cuya convalidación y reconocimiento se solicita. Esta reclamación será acompañada de una copia certificada, legible, completa y en cumplimiento con los requisitos de las Reglas de Evidencia de la sentencia cuya convalidación y reconocimiento se solicita. Regla

55.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.3. A su vez, incluirá la traducción fiel y exacta al idioma español de la sentencia, en caso de no haber sido redactada originalmente en el idioma español o en el idioma inglés. Íd.

Cumplido lo anterior y luego de resolver cualquier controversia procesal pertinente, el foro primario estará en posición para dilucidar si la sentencia relativa a otra jurisdicción exhibe las normas prescritas por la Regla 55.5(a) de Procedimiento Civil, *supra*:

> **(a)  Si se trata de una sentencia de un estado de Estados Unidos de América o sus territorios:**
> **(1)  Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;**
> **(2)  que el tribunal que la emitió haya observado el debido proceso de ley, y**
> **(3)  que no haya sido obtenida mediante fraude.**

32 LPRA Ap. V, R. 55.5(a). (Énfasis nuestro).

En suma, el procedimiento de exequátur aplica exclusivamente a aquellas situaciones relacionadas con sentencias dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña y, a su vez, los requisitos varían dependiendo de si la sentencia que se pretende validar es de un país extranjero, o de un estado de Estados Unidos. *Toro Avilés v. P.R. Telephone Co., supra,* pág. 376. Lo anterior responde a que "el derecho público de la mayor parte de las naciones del mundo civilizado requiere que los tribunales del foro donde se pretenden hacer efectivas sentencias extranjeras las reconozcan y convaliden". *Mench v. Mangual*, *supra*, pág. 856.

Conforme surge del ordenamiento antes citado, "en el contexto específico de sentencias dictadas por los tribunales estatales de Estados Unidos el proceso es más sencillo, pues sirve

para cumplir con las disposiciones de la cláusula de entera fé y crédito, Art. IV, sec. 1 Const. EE. UU., LPRA, Tomo 1." *Colón Vega v. Díaz Lebrón,* supra, a la pág. 558. En dicho caso se continúa expresando y citamos:

"En esas circunstancias, luego de resolver planteamientos procesales, el tribunal deberá comprobar que un foro con jurisdicción dictó la sentencia, mediante el debido proceso de ley, y que esta no se obtuvo por fraude. Regla 55.5 de Procedimiento Civil, supra". *Colón Vega v. Díaz Lebrón,* supra, a la pág. 558.

### III.

Evaluados todos los trámites en este caso, concluimos que habiendo sido dictada la Sentencia por un Tribunal de un estado de Estados Unidos de América, con jurisdicción para atender el tipo de controversia que ambas partes trajeron a su atención y cumplido el debido proceso de ley y no habiendo mediado fraude en la obtención de la Sentencia, procede conferir a la Sentencia del estado de New Hampshire que aquí evaluamos, entera fé y crédito. Ante ello, no procede expedir el recurso solicitado y debe denegarse el auto.

El peticionario se presentó en el Tribunal que dictó la Sentencia juntamente con la parte recurrida y de esa forma las partes acordaron someterse al proceso judicial en New Hampshire. El peticionario luego decidió no participar más de ese proceso y el Tribunal del estado de New Hampshire, con jurisdicción sobre todas las partes y sin oposición ante dicho foro, dictó la Sentencia de forma válida. No se cometió por el TPI el error reclamado y ante ello procede denegar la expedición del recurso.

## IV.

Por los fundamentos que anteceden, ***denegamos*** el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones